IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER A. S.,** | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 22-CV-409-MTS ) |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jennifer A. S. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On April 30, 2018, Plaintiff filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA. (R. 198). She alleged an inability to work beginning on April 15, 2017, due to limitations resulting from post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, anxiety, and depression. (R. 215, 219, 808). Plaintiff was forty-three years old at the time of the ALJ's decision. (R. 819). She has at least a high school education and past relevant work as a child monitor and accounts payable representative. *Id.*

Plaintiff's application was denied both initially and upon reconsideration. (R. 75–115). On November 26, 2019, ALJ Laura Roberts issued a decision denying benefits and finding Plaintiff not disabled. (R. 13–37). Plaintiff sought review by the Appeals Council, which was

denied on June 17, 2020. (R. 1–6). Plaintiff then filed suit and the case was ultimately remanded to the Social Security Administration for further proceedings and a new hearing on July 29, 2021. (R. 891–92). On November 8, 2021, the Appeals Council issued a remand order vacating the Commissioner's decision and remanding the case for further proceedings. (R. 898–99).

ALJ Christopher Hunt then conducted a second administrative hearing on May 5, 2022. (R. 808, 828–85). The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 887–88). ALJ Hunt issued a decision on May 23, 2022, denying benefits and finding Plaintiff not disabled. (R. 805–27). The Appeals Council did not assume jurisdiction and Plaintiff did not file written exceptions disagreeing with the hearing decision. *See* 20 C.F.R. § 404.984. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. *Id.*

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since April 15, 2017. (R. 810). At step two, he found Plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, bipolar disorder, and PTSD. (R. 811). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. *Id.* Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform a full range of work at all exertional levels" with the following additional non-exertional limitations: "simple but not detailed or complex tasks, superficial and cursory contact with coworkers, supervisors and the general public, working with things rather than people, and no fast paced integral team assembly line work or poultry processing." (R. 813).

4

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a child monitor or an accounts payable representative. (R. 819). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of price marker, router, and night cleaner, all of which he found existed in significant numbers in the national economy. (R. 820). As a result, the ALJ found Plaintiff had not been under a disability from April 15, 2017, through the date Plaintiff was last insured. (R. 821).

## Errors Alleged for Review

Plaintiff asserts two errors for review in her challenge to the Commissioner's second denial of benefits on appeal.[1] (Docket No. 13 at 5–6). First, Plaintiff argues the ALJ denied her due process by allegedly failing to abide by the Appeals Council's remand order, in addition to "not permitting proper cross-examination of the vocational [and medical] expert witness[es]." *Id.* at 5–11. Second, Plaintiff asserts the ALJ's RFC assessment is not supported by substantial evidence. *Id.* at 5, 11–15.

## Due Process at the Social Security Hearing

Although social security hearings are subject to procedural due process considerations, it is generally within the ALJ's discretion how to conduct the hearing. *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 400–02 (1971)); *see* 20 C.F.R. § 404.944 ("A hearing is open to the parties and to other persons the [ALJ] considers

---

[1] Although Plaintiff includes an argument that the ALJ's consistency findings are not supported by substantial evidence in her briefing under "Errors on Appeal," she does not expand upon or make further arguments as to this assertion. (Docket No. 13 at 6). Therefore, the Court will only address the two arguments that Plaintiff fully developed in her Opening Brief. *See United States v. De Vaughn*, 694 F.3d 1141, 1154–55 (10th Cir. 2012) (noting that arguments are considered waived if not adequately briefed in an opening brief).

necessary and proper.  At the hearing, the [ALJ] looks fully into the issues, questions you and other witnesses, and . . . [a]ccepts as evidence any documents that are material to the issues[.] . . . The [ALJ] may decide when the evidence will be presented and when the issues will be discussed."). This discretion includes the cross-examination of witnesses.  *See Galdean v. Barnhart*, 46 F. App'x 920, 923 (10th Cir. 2002) ("[W]e note that 'the role of cross-examination in disability proceedings should remain limited.'") (quoting *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999)). Crucially, "[a] due process claim will not succeed . . . if the claimant fails to show prejudice." *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014) (citing *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009)).  To demonstrate prejudice, the claimant must show "that the adjudication was infected by some prejudicial, fundamentally unfair element," the absence of which would have likely resulted in a different outcome.  *Id*. at 573–74.

According to Plaintiff, the ALJ erred by preventing Plaintiff's counsel from properly cross-examining the VE and the medical expert ("ME"), in addition to preventing counsel from making "summation arguments."  (Docket No. 13 at 6–11).  In response, the Commissioner maintains that Plaintiff's counsel was given the opportunity to properly cross-examine both witnesses.  (Docket No. 15 at 6–9).  Regarding the ALJ's denial of counsel's request to make closing statements, the Commissioner contends Plaintiff failed to show that she suffered any resulting prejudice.  *Id*. at 9.

### A. Cross-Examination of the Vocational Expert

Pursuant to the Appeals Council's remand order, the ALJ was to obtain additional vocational evidence at a subsequent hearing.  Specifically, the ALJ was to "allow the claimant the opportunity to question the vocational expert fully on any pertinent matters within the vocational expert's area of expertise[,]" which included "the vocational expert's experience placing individuals in the national economy and industrial standards . . . ."  (R. 898–99).  After the ALJ

examined the witness, he allowed Plaintiff's counsel to cross-examine the VE. (R. 873–84). There was a brief discussion about the available work previously identified by the VE, then the following exchange occurred:

> BY ATTORNEY:
> Q: And in your experience, have you dealt with, you know, people that have the diagnoses, the problems of this claimant? Have you heard, dealt with people like that?
> VE: Can you put it, like, in vocational terms? Like have I --
> Q: That is a --
> A: -- most --
> Q: -- vocational term, you know? If you've dealt with people like her.
> A: Yes.
> ALJ: I --
> VE: I've dealt --
> ALJ: That's not a vocationally relevant question. You --

(R. 880–81).

Counsel proceeded to argue with the ALJ regarding the relevancy of the question at issue. (R. 881–82). After the ALJ advised counsel that he was to limit his cross-examination to relevant questions, such as asking the VE about specific hypotheticals, counsel proceeded with his examination:

> BY ATTORNEY:
> Q: Have you worked with people with mental impairments?
> VE: Yes, I have.
> Q: Have you worked with people with, who are bipolar?
> A: I've worked with different -- I've worked with --
> Q: Just yes or no.
> A: -- a whole --
> Q: Please, just answer yes or no to me, okay?
> ALJ: Ma'am, do you know whether, when you work with a person, do you know what their diagnosis is, whether it's bipolar, schizophrenic, depressive?
> VE: If it's -- yes. If it's given to me, yes.
> ALJ: Okay. So, have you worked with a person that has bipolar disorder?
> VE: I have.
> ALJ: Okay. Does it, what relevant, vocationally relevant terms would you need to answer the question?
> VE: Yes.
> ALJ: Is something like frequent on task? Off-task?
> VE: Yes. Off-task 20 percent or less, something like that --

> ALJ: Okay.
> VE: -- as far as task relation.
> BY ATTORNEY:
> Q: Now, does somebody with those diagnoses and the diagnoses like the claimant has, present a challenge for you as a vocational counselor?
> A: Well, most of the time, when someone's like that, they need a job coach.

(R. 882–83).

Not only did the ALJ properly exercise his discretion in limiting counsel's examination to vocationally relevant questions, the ALJ allowed the VE to answer counsel's question at issue despite deeming it irrelevant. (R. 881). Regardless, Plaintiff makes no argument as to how she was prejudiced by the ALJ's imposed limitations other than offering the bare assertion that she was indeed prejudiced. (Docket No. 13 at 10). Therefore, Plaintiff cannot show the ALJ's conduct violated her due process rights.

### B. Cross-Examination of the Medical Expert

During his questioning of the ME, the ALJ asked if Plaintiff met or equaled any of the listed impairments recognized by the Social Security Administration. (R. 835). The ME testified that Plaintiff met Listing 12.04 and supported his conclusion by citing to specific evidence in the record. (R. 835–36). Specifically, the ME referred to records from Family & Children Services dated May 21, 2018, in which the clinician mentioned Plaintiff's Patient Health Questionnaire 9 ("PHQ-9"). (R. 604, 636, 835–36). However, when asked if Plaintiff met Listing 12.04 during the relevant period, the ME stated that there was insufficient evidence to support the finding that Plaintiff met Listing 12.04 prior to March 31, 2019, her date last insured. *Id.* at 836. Although the ME stated that Plaintiff did not meet Listing 12.04 during the relevant period, he testified that Plaintiff most likely experienced various functional limitations prior to 2019 because of her impairments. (R. 836–38).

Plaintiff argues the ALJ violated her due process rights by disallowing her counsel to

question the ME "as to specific dates as to when Plaintiff equaled Listing 12.04." (Docket No. 13 at 9) (citing R. 848–49). The relevant hearing testimony is as follows:

> BY ATTORNEY:
> Q: Okay. So, when did these, this 12.04 manifest itself?
> A: That would be, since she was a young teen.
> Q: Oh. Well, I thought you were, I thought you had testified that it was after March of 2019. That's what, that's kind of critical here. Was that what you meant?
> A: The 12.04 is the bipolar.
> Q: Yeah.
> . . .
> Q: . . . Was she under these diagnoses to the listing level at the time she lost her job in 2017?
> A: I don't know if she [w]as.
> . . .

(R. 844–45).

Counsel and the ME continued to discuss Plaintiff's functionality, with some interjections from the ALJ, as follows:

> Q: Right. Right. Well, I, and I guess that's the point here. If we're just looking, if we're just to look before March 31st, 2019, all of this stuff's in there, isn't it? There's the problems with her ex-husband. There are the problems with her mother. There are the problems of hoarding. There are, there's some OCD going on, also, correct?
> A: I didn't put that in, so I didn't see that.
> Q: Well, it's in there. It is in there. I'm not making it up. I mean, there's 850 pages. Some of them are after 2019, but there's a whole lot before 2019. Is this somebody who, with all of these things going on would be able to engage in a job on a full-time basis?
> A: Well, I have that statement at 6F that says no.
> ALJ: But you said [previously] that she could do simple tasks. You said she could interact with coworkers and supervisors and the general public at a cursory and superficial basis. That she could not --
> ME: It's not --
> ALJ: Right. And you also said that she could not perform fast-paced work at, in integral team assembly line work.
> ME: Yes.
> ALJ: Is that at, what your limitations are prior to '19, is that correct –
> ME: Yes, sir.
> . . .
> ATTY: And on what date? And why do you -- what date are you coming up with that she could do that?
> ALJ: My question was, to the doctor, prior to March of 2019, and that's what he told me.
> BY ATTORNEY:

9

> Q: And so, when, Doctor, does it fall off of that? After that?
> A: We're going according to the judge's question.
> Q: Well, okay. I'm not sure what that means. We're going according to the judge's question.
> ALJ: I asked a very particular question. What was her condition prior to March of 2019? And that was his response.
> ATTY: Oh, I --
> ALJ: He said she would equal the listing after some time after March of 2019 at 12.04.
> ATTY: Well, when? When, Doctor? Tell me when, after 2019, she would meet the listing.
> ALJ: That's irrelevant, Mr. McTighe. This is a Title --
> ATTY: No, it's not.

(R. 846–48).

Counsel then continued to argue with the ALJ about the relevancy of his question, which the ALJ ultimately did not allow. (R. 848–50). The ALJ presented counsel with an opportunity to continue, which counsel appeared to decline, resulting in the ALJ ending the cross-examination of the ME. *Id.*

Again, the ALJ properly exercised his discretion in limiting counsel's examination to questions addressing the relevant period of April 15, 2017, to March 31, 2019. *See Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014) (holding that, in Title II cases, the relevant period is from the alleged onset date through the date the claimant was last insured). A review of the hearing transcript shows counsel did not attempt to question the ME about his reliance on the PHQ-9; the transcript demonstrates counsel attempted to ask the ME as to when exactly Plaintiff met Listing 12.04 after March 31, 2019, her date last insured. (R. 846–48). Moreover, counsel did cross-examine the ME for some time and was only stopped by the ALJ after counsel repeatedly attempted to ask a question the ALJ deemed irrelevant. (R. 838–50). Thus, Plaintiff cannot show the ALJ's conduct here violated her due process rights.[2]

---

[2] While Plaintiff appears to briefly allege that the ME's testimony regarding Listing 12.04 was erroneous, seemingly because the ME "stated that the finding of the PHQ-9 was after 3-31-19" (Docket No. 13 at 9), the Court does not address such an assertion, as the substance of Plaintiff's

**C. Closing Arguments**

Relying entirely on the Hearings, Appeals and Litigation Law Manual ("HALLEX"), one of the Social Security Administration's internal procedure manuals, Plaintiff argues the ALJ erred by not allowing counsel to make closing statements. (Docket No. 13 at 10–11) (citing HALLEX I-2-6-76). The Tenth Circuit has yet to rule on "whether HALLEX provisions are binding on federal courts or whether a violation of HALLEX constitutes a violation of procedural due process." *Jimenez v. Astrue*, CIV-08-0817 KBM, 2009 WL 10708193, at *7 (D.N.M. May 14, 2009); *see Lee v. Colvin*, 631 F. App'x 538, 543 (10th Cir. Nov. 12, 2015). Regardless, the Tenth Circuit has made clear "that only prejudicial violations of HALLEX provisions entitle a claimant to relief." *Lee*, 631 F. App'x at 543 (citing *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001)).

Plaintiff is correct in her assertion that the ALJ denied counsel the opportunity to make closing statements. (R. 884–85). However, Plaintiff failed to articulate how this denial prejudiced her whatsoever. And, as stated above, failure to adhere to HALLEX is not a *per se* violation of due process. Thus, the Court finds Plaintiff's final argument that her due process rights were violated to be unavailing.

**The ALJ's Residual Functional Capacity Analysis**

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

---

argument does not focus on the ME's testimony being erroneous. Instead, the foundation of Plaintiff's argument rests on whether her due process rights were violated and whether her counsel received the opportunity to properly cross-examine the ME.

facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id.* He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.* However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Plaintiff argues the ALJ's RFC findings are not supported by substantial evidence because "Plaintiff's medical record is replete with substantial evidence from four mental health sources . . . . [showing] Plaintiff's severe mental disability." (Docket No. 13 at 12). Plaintiff also takes issue with "[t]he ALJ's lack of finding regarding the amount of days of work that the Plaintiff will miss . . . ." *Id.* at 13.

The ALJ began his discussion of the RFC determination by stating that he considered Plaintiff's symptoms, the objective medical evidence, medical opinions, prior administrative medical findings, and other evidence. (R. 813). He then discussed Plaintiff's hearing testimony and determined that her "statements about the intensity, persistence, and limiting effects of . . . her symptoms [were] inconsistent because . . . the claimant's mental health improved with treatment allowing her to perform work consistent with the above [RFC]." (R. 814). The ALJ proceeded by discussing the objective medical evidence, noting that Plaintiff experienced some abnormal

12

moods/affects, but that she generally had unremarkable psychiatric findings. (R. 814–17). Next, he addressed ME Sternes' hearing testimony and found his opinion persuasive because it was supported by his review of the evidence, in addition to being consistent with the other evidence of record. (R. 817). The ALJ noted that Plaintiff appeared to be stable with medication and therapy treatment from 2018 through March 2019, which is why he found a third-party statement from Plaintiff's mother to be unpersuasive. (R. 817–18). Lastly, the ALJ discussed the opinions of the psychological consultants, both of which he found unpersuasive. (R. 818–19). The ALJ found the psychological consultant's opinion at the initial level that Plaintiff's impairments were non-severe to be unpersuasive because it was inconsistent with Plaintiff's ongoing mental health treatment. (R. 818). He likewise found the psychological consultant's opinion at the reconsideration level unpersuasive, as the ALJ determined that the evidence supported the imposition of more restrictive non-exertional limitations than those imposed by the consultant. (R. 819).

Plaintiff essentially asks this Court to re-weigh the evidence and substitute its judgment for that of the Commissioner, which it cannot do, because Plaintiff disagrees with the ALJ's assessment of the evidence. *Casias*, 933 F.2d at 800. Contrary to Plaintiff's claim that "[t]he ALJ's mental RFC downplays Plaintiff's actual mental condition[,]" the ALJ thoroughly discussed the evidence of record, including Plaintiff's mental health records, and determined that Plaintiff had shown consistent improvement with therapy and medication treatments. (R. 813–19). Because the decision is supported by substantial evidence, the Court is unpersuaded by Plaintiff's argument that the ALJ's RFC determination is erroneous.

Finally, Plaintiff argues that because she "had 104 appointments with either medical physicians or mental health professionals" between January of 2017 and September of 2019, the

ALJ's RFC should have addressed Plaintiff's possible absenteeism. (Docket No. 13 at 13–15). A review of the record indicates that most of the appointments Plaintiff references lasted approximately an hour or less. *Id.* at 13–14. Further, Plaintiff failed to offer any explanation as to why appointments with a mental health professional or appointments regarding medication management would require missing an entire day of work. Moreover, such an argument has been repeatedly rejected by the Tenth Circuit and other courts. *See Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000); *Leaverton v. Colvin*, No. 11-CV-778-FHM, 2013 WL 1316901, at *3 (N.D. Okla. Mar. 29, 2013); *Bricker v. Kijakazi*, No. CIV-21-276-P, 2022 WL 852868, at *3 (W.D. Okla. Mar. 22, 2022). This Court is likewise unpersuaded by Plaintiff's argument, as there is no explanation as to why these appointments would require missing an entire day of work or why they could not be made to accommodate a work schedule.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 15th day of December, 2023.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT